UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAN BONIFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:21-cv-705-MTS |
| ) | |
| KILOLO KIJAKAZI, *Acting Commissioner of* ) | |
| *the Social Security Administration*, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant, the Acting Commissioner of Social Security, denying the application of Dan Bonifield ("Plaintiff") for Disability Insurance Benefits ("DIB").[1] In June 2019, Plaintiff applied for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 (the "Act"). Plaintiff alleged disability due to partial blindness, arthritis, vascular calcification, degenerative disc disease, high blood pressure, and high cholesterol with an alleged onset date of April 10, 2019.[2] (Tr. 161). In October 2020, following a hearing, (Tr. 27–49), an Administrative Law Judge ("ALJ") issued her decision finding that Plaintiff was not disabled as defined in the Act. (Tr. 11–22). For the following reasons, the Court reverses and remands.

I. **Standard of Review and Legal Framework**

To be eligible for disability benefits, Plaintiff must prove that he is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a

---

[1] Section 1383(c)(3) of the Act provides for judicial review of the SSA Commissioner's "final decision." After the ALJ concluded Plaintiff was not disabled under the Act, (Tr. 11–22), the Appeals Council denied Plaintiff's request for review, (Tr. 1–5); thus, the ALJ's decision stands as the Commissioner's final decision.
[2] Plaintiff amended his onset date from January 1, 2014, to April 10, 2019.

1

disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to his past relevant work by comparing the RFC with the physical demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled. *Id.*

The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision). The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp." *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## II. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity during the alleged period of disability. (Tr. 14). At Step 2, the ALJ found Plaintiff had severe impairments of degenerative disc disease of the lumbar spine and obesity. (Tr. 14–15). At Step 3, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment. (Tr. 15). Thus, the ALJ determined Plaintiff had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567, with occasional postural and environmental limitations. (Tr. 15–19). At Step 4, the ALJ found Plaintiff could return to his past relevant work as a locksmith. (Tr. 19–20).[3] Consequently, the ALJ concluded Plaintiff was not disabled under the Act. (Tr. 22).

## III. Discussion

In denying Plaintiff's disability claim, the ALJ concluded Plaintiff had not shown he was disabled from April 10, 2019—Plaintiff's alleged onset date—through December 31, 2019—the date Plaintiff's insured status expired ("Date Last Insured"). (Tr. 22); *see also Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984) (explaining a claimant has the burden of establishing the existence of a disability on or before the expiration of her insured status). In making this decision, the ALJ relied heavily on the lack of objective medical evidence to support Plaintiff's alleged physical limitations. *See, e.g.*, (Tr. 17–18). Prior to the Date Last Insured, Plaintiff's medical imaging "revealed only 'mild' degenerative changes and was negative for stenosis, disc bulges,

---

[3] The Court acknowledges Plaintiff's argument that the ALJ did not properly consider the adverse vocational factors in plaintiff's borderline age situation, Doc. [25] at 3, but notes that such factors "come into play at step five of the analysis." *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The ALJ's analysis *ended* at Step 4 when she concluded Plaintiff could return to his past relevant work, and thus, he was not disabled. Although the ALJ made an "alternate" Step 5 determination in the claim as well, (Tr. 20–22), and as such, the age analysis would then apply, this would not be a cause for remand in the case here.

4

disc herniation, impingement, involvement of the spinal cord or nerve roots, or any signs consistent with radiculopathy." (Tr. 17).

Although the ALJ typically must "only consider the applicant's medical condition as of his or her date last insured," *Turpin*, 750 F.3d at 993, evidence from outside the insured period can be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." *Cox*, 471 F.3d at 907; *see also Basinger*, 725 F.2d at 1169 ("If the diagnosis is based upon a 'medically accepted clinical diagnostic technique,' then it must be considered in light of the entire record to determine whether 'it establishes the existence of a 'physical impairment' prior to' the expiration of the claimant's insured status."). As such, "[m]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status." *Basinger*, 725 F.2d at 1169.

Here, the record shows that in 2019, during the insured period, Plaintiff presented to physicians with severe symptoms of back and hip pain and limitations. *See, e.g.*, (Tr. 272, 343, 356). Based on his symptoms and x-rays,[4] these physicians ordered imaging (i.e.: MRI), but Plaintiff was "self-pay" and had no health insurance.[5] *See, e.g.*, (Tr. *id*). Plaintiff applied for insurance and was told to call back when his insurance went through so that he could obtain the

---

[4] Prior to Date Last Insured, an X-ray showed degenerative disc disease *at every level* of the lumbar spine, degenerative changes in both hips, and calcifications in his legs. (Tr. 343) (April 2019 X-ray). Plaintiff also showed decreased DP/PT pulses and deep tendon reflexes were only 1+ in the Achilles tendon. (Tr. 356). Given these symptoms and X-ray results, the physician recommended the MRI in 2019. (Tr. 356). The Court notes that had the MRI been given in 2019, when it was ordered, the record suggests that objective imaging would have shown Plaintiff had disc bulging at every level along with degenerative disc disease at every level in his lumbar spine as well as degenerative changes in both hips. The ALJ should have considered this imaging as a whole.

[5] Based on the record, the Court finds it troubling that the ALJ concluded "[t]here is no evidence that the claimant's treatment from April 2019 through December 2019 was limited by financial constraints or issues with insurance." (Tr. 17).

5

imaging. (Tr. 356). After his Date Last Insured, MRI imaging revealed disc bulging at every level in his lumbar spine and a level of the sacral spine. (Tr. 347).

The Court finds that the post-insured objective medical evidence "bear[s] upon the severity" of Plaintiff's condition *before* the expiration of his insured status. *Basinger*, 725 F.2d at 1169. As such, the ALJ should have considered this evidence when evaluating Plaintiff's alleged disabilities. This error is especially pronounced here given that the ALJ based the majority of the decision on a lack of objective medical evidence to support Plaintiff's subjective complaints of pain.[6] *See, e.g.*, (Tr. 17) ("the objective medical evidence from prior to the date last insured falls short of corroborating the claimant's allegations regarding the severity and limiting effects of his pain"); (*Id.*) ("The medical imaging is not consistent with complaints of severe pain and limitation, because it revealed only 'mild' degenerative changes and was negative for stenosis, disc bulges, disc herniation, impingement, involvement of the spinal cord or nerve roots, or any signs consistent with radiculopathy."); (Tr. 18) ("There is no other objective evidence of functional limitations"). Had the ALJ properly considered the 2020 MRI results, she could not have concluded that objective medical evidence did not support Plaintiff's claims of pain, severity, and limitation.[7] As

---

[6] The ALJ also improperly considered Plaintiff's "conservative" treatment when she failed to consider Plaintiff's financial constraints and issues with insurance. (Tr. 17); *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004) (finding conservative approach to treatment not significant in credibility determination given claimant's financial constraints where she "must pay for each doctor visit in cash out of her own pocket"). Also, the ALJ found that Plaintiff's allegations of limitation were inconsistent with his daily activities. (Tr. 16). On remand, the Court notes that Plaintiff's ability to engage in some life activities, however, does not support a finding that he retains the ability to work. *See, e.g.*, *Brosnahan*, 336 F.3d at 677 ("[W]e have held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity.").

[7] The Court also notes that Dr. Donna McCall, a state agency medical consultant, did *not* review the post-insured MRI results. *See McCoy*, 648 F.3d at 515 ("the opinion of a non-examining consulting physician is afforded less weight if the consulting physician did not have access to relevant medical records including relevant medical records made after the date of evaluation" (citing *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010)). As the only medical opinion in the record, the ALJ relied on Dr. McCall's administrative finding to formulate the RFC and found it "persuasive." (Tr. 18–19).

such, the Court holds that the ALJ improperly failed to consider relevant evidence and also improperly used the lack of evidence to negatively affect Plaintiff's credibility determination.

### CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's determination is not supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner is **REVERSED** and **REMANDED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 1st day of August 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE